UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GRACE B. RYAN AND CLARA RYAN    CIVIL ACTION

VERSUS           NO.  09-3261

THUNDER RESTORATIONS, INC.,    SECTION "B"(1)
ABC INSURANCE, CHUBB FEDERAL
INS. CO. AND MARK REYER

## ORDER AND REASONS

**IT IS ORDERED** that the Motions to Stay Proceedings and Compel Arbitration, with respect to both Defendant Thunder and Defendant Federal are **GRANTED**. (*See* Rec. Doc. Nos. 65,66,68,73).

**IT IS FURTHER ORDERED** that the Motions to Dismiss, with respect to both Defendant Thunder and Defendant Federal are **DENIED.**

**IT IS FURTHER ORDERED** that the captioned action shall be administratively closed for statistical purposes only, without prejudice to the parties' right to reopen the case upon timely compliance with the orders contained herein.  The stay of proceedings and administrative closure can be lifted upon motion of either party <u>provided</u> said motion is filed no later than **<u>thirty (30) days after resolution of the arbitration proceeding.</u>** Failure to timely file the motion to reopen will lead to dismissal of this action without further notice.

I.   **Thunder's Motion to Dismiss, or in the alternative to Stay Proceedings and Compel Arbitration.**

   A. **Standard of Review for Motion to Stay pursuant to 9 U.S.C. §§ 2, 3.**

According to § 2 of the Federal Arbitration Act ("FAA"), a "written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  To enforce this provision, § 3 of the FAA requires courts to stay legal proceedings whenever the disputed issue in the case is within the reach of an arbitration agreement. *Midwest Mechanical Contractors, Inc.*, 801 F.2d at 751.  In ruling on a motion to stay under § 3, a court must determine 1) whether a written agreement between the parties to arbitrate exists and 2) whether the issues raised are within the reach of that agreement.  *Complaint of Hornbeck Offshore (1984) Corporation et al v. Coastal Carriers Corporation*, 981 F.2d 752 (5th Cir. 1993).

When determining whether a dispute is covered by an agreement to arbitrate, the United States Fifth Circuit Court of Appeals distinguishes between broad and narrow arbitration clauses.  *Id.* at 754.  If the clause is broad, the action should

2

be stayed and referred to arbitration. *Id*. If the clause is narrow, the Court must determine whether the agreement encompasses the particular dispute in the case; if not, the matter should not be stayed. *Id*. at 755.

Because the FAA is a "congressional declaration of a liberal policy favoring arbitration," all doubts as to the arbitrability of a dispute must be resolved in favor of arbitration. *Hornbeck*, 981 F.2d at 752; *Harvey v. Joyce,* 199 F.3d 790, 793 (5th Cir. 2000). The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration. *Gilmer v. interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). As a result, courts must rule in favor of arbitration "whether the problem at hand is the construction of the contract itself or an allegation of waiver, delay or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). Moreover, the FAA's § 3 provisions are mandatory – a court has no discretion to deny a stay unless 1) the presumption in favor of arbitration is overcome with clear evidence that the parties did not intend the claim to be arbitrable, or 2) the agreement does not permit any interpretation that would cover the dispute at issue. *Id.; Neal*

*v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990).

If the arbitration agreement extends to the claim in question, the Court must next consider whether the right to arbitrate has been waived. *See Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002); *Miller Brewing Co. v. Fort Worth Distrib. Co.,* 781 F.2d 494, 497 (5th Cir. 1986). Waiver may be appropriate when 1) a party has substantially invoked the judicial process and 2) that party's steps towards litigation prejudiced the party opposing arbitration. *Republic Ins. Co., v. Paico Receivables, LLC.,* 383 F.3d 341, 346-347 (5th Cir. 2004). Once again, however, courts within the jurisdiction of the Fifth Circuit employ a strong presumption against finding waiver, placing a heavy burden of proof upon the party opposing arbitration. *Walker v. J.C. Branford & Co.,* 938 F.2d 575, 577 (5th Cir. 1991).

Courts must assess the first prong of the waiver inquiry – whether a party has substantially invoked the judicial process- on a case-by-case basis. *Tenneco Resins, Inc. v. Davy Int'l, AG,* 770 F.2d 416, 420 (5th Cir. 1985). In making this determination, a court may consider such factors as the filing of dispositive motions and the extent of the party's participation in discovery.

*Id.; Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1159 (5th Cir. 1986).

In terms of the second prong – whether or not the movant's actions have prejudiced the other party – prejudice refers to "the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 327 (5th Cir. 1999). The Fifth Circuit dictates that courts must predicate their analysis of prejudice on three main factors:  1) the amount of pretrial activity related to arbitrable claims; 2) the time and expense that the party opposing arbitration incurred while defending against its opponent's litigation efforts and 3) the party seeking arbitration's delay in asserting its right to arbitrate. *Id.*

In this case, there is no dispute that a written agreement to arbitrate exists between the parties. The Court must subsequently determine whether the Ryans' claim for breach of contract is within the reach of that agreement, and if so, whether Thunder has waived its right to seek arbitration. *Primerica Life Ins. Co.*, 304 F.3d at 471.

5

**B. Scope of the Arbitration Agreement**

The Ryans' breach of contract claim falls within the reach of the written arbitration agreement between the parties. *Hornbeck*, 981 F.2d at 754; (*See* Rec. Doc. No. 65-1, Work Authorization and Contract at 2). Even though the clause is narrow in scope, the arbitration requirement still controls the dispute in question. *Id.*

The Fifth Circuit distinguishes between broad and narrow arbitration clauses when determining the scope of an arbitration agreement. *Hornbeck*, 981 F.2d at 754. Broad arbitration clauses cover all disputes that arise under, relate to, or exist in connection with the underlying contract. *Baudoin v. Mid-Louisiana Anesthesia Consultants, Inc.,* 306 Fed.Appx. 188, 192 (5th. Cir. 2009). If a clause is broad, the action should be stayed and the dispute should be settled in arbitration. *Hornbeck*, 981 F.2d at 755.

Narrow clauses only control the arbitration of disputes that "arise out of" or "under" the agreement. *Baudoin*, 306 Fed.Appx. at 192. When a clause is narrow, the courts must determine whether the agreement to arbitrate extends to the particular type of dispute in question. *Id.* Unless the dispute falls within the

reach of the arbitration agreement, a court should not stay the proceedings or refer the matter to arbitration. *Hornbeck*, 981 F.2d at 755. An arbitration clause that "arises out of" or "under" an agreement only covers disputes that relate to the interpretation and the performance of the contract itself. *Tracer Research Corp. v. National Evti. Svcs. Co.,* 42 F.3d 1292, 1295 (9th Cir. 1994) *(cited with approval by Pennzoil Exploration and Production Co. v. Ramco*, 139 F.3d 1061, 1067 (5th Cir. 1998)).

In determining whether an arbitration clause is broad or narrow, the Court must assess the language of the provision on its face, while taking care to consider the context under which that language arises. *See Baudoin,* 306 Fex.Appx. at 192. As the Fifth Circuit explained in *Baudoin*, the language of the arbitration clause should not be read in isolation, but rather in the context of the agreement and in a way that avoids an absurd result. *Id.*

Here, the Ryans' written agreement with Thunder is best characterized as a narrow arbitration clause. The relevant provision states:

3. Disputed (sic) Resolution.

a. Right to Stop Work.  In the event a dispute arises between Customer and Thunder Restoration or Customer's Insurance company and Thunder Restoration with regards to the subject Matter of this contract, Thunder Restoration reserves the right to immediately cease work and Customer waives all right the Customer may other have for any claims or damages due to any interruption of the work.  In such event, Contractor and Customer agree to meet within three (3) business days of the cessation of the work, and attempt to resolve the dispute.

b. In the event the parties are unable to resolve the dispute. (sic) The dispute shall be resolved by arbitration in accordance with the rules of the American Arbitration Association.

(Rec. Doc. No. 65-1, Work Authorization and Contract at 2.) Notably, Section (b) does not include any of the language that the Fifth Circuit categorized as indicative of a broad arbitration clause; phrases such as "any dispute," "in connection with," or "relating to" the agreement are conspicuously absent. *Id.*; *Pennzoil*, 139 F.3d at 1067.  *Coffman v. Provost * Umphrey Law Firm, LLP,* 161 F.Supp.2d 720, 725 (E.D.Tex. 2001).  Moreover, the "dispute" referenced in Section (b) clearly refers back to the "dispute" defined in Section (a) – namely one that "arises ... with regards to the subject Matter of this contract." *Id.*, (Rec. Doc. No. 65-1, Work Authorization and Contract at 2). Arbitration clauses that are limited to disputes arising under

the contract and its subject matter are narrow; therefore the Ryans' arbitration agreement is properly categorized as a narrow clause. *Coffman*, 161 F.Supp.2d at 725, (Rec. Doc. No. 65-1, Work Authorization and Contract at 2).

Having defined the clause as narrow, the Court must next determine whether the Ryans' claim falls within the parameters of the arbitration agreement. *Harvey*, 199 F.3d at 793. It does. Disputes arising from the subject matter of the contract properly include disputes relating to the interpretation and performance of the contract. *Tracer Research Corp.*, 42 F.3d at 1295. Because a claim for breach of contract relates to the performance of the contract, the Ryans' claim is arbitrable. *Id.*

Moreover, the Ryans' contention that the arbitration clause covers only disputes related to the "right to stop work" – and therefore does not encompass a breach of contract claim – is unavailing for three reasons.

First, the Ryans' argument goes against any logical reading of the agreement. A court should employ the standard rules of contract construction in order to reach an interpretation that gives a reasonable, lawful and effective meaning to all the terms of an agreement. *Harvey*, 199 F.3d at 793-794; *Baudoin*, 306

9

Fed.Appx. at 192-193.   In so doing, the Court should err against interpretations that are unreasonable, inconsistent or absurd. See *Id.*  Because the arbitration clause – Section (b) – does not itself define the types of disputes that are arbitrable, it must be considered in the context provided by Section (a). *Baudoin*, 306 Fed.Appx. at 193.   Section (a) defines disputes as those "arising ... with regards to the subject Matter of the contract." (Rec. Doc. No. 65-1, Work Authorization and Contract at 2.)   All subsequent mentions of a "dispute" clearly refer back to this initial definition.   *Id.*   Section (a) does not, at any point, mention or discuss disputes over the right to stop work.   *Id.* The Ryans' assertion to the contrary engages in a fundamental misreading of the section.   *Id.*   Section (a) merely grants Thunder the right to stop work should a dispute, namely, *a dispute arising with regards to the subject matter of the contract*, occur.   *Id.*   It would run contrary to the manifest intent of the agreement to confine the arbitration clause to only those disputes that arise from the right to stop work.   *Id.; Baudoin,* 306 Fed.Appx. at 192-193.

Second, the Court must resolve all doubts in favor of arbitration.   *Harvey,* 199 F.2d at 793.   Therefore, even if the

Ryans' reading of the arbitration clause had merit, it ought to be rejected in favor of an interpretation that allows for arbitration. *Id.*

Third, the Ryans contend that if the Court grants the motion to stay, they will be forced to pursue their claims against Thunder and Federal in separate forums. (Rec. Doc. No. 66 at 2). According to the Ryans, this bifurcation runs counter to the policy goals of the FAA, which promote the fast and efficient resolution of claims – therefore the Court should employ an interpretation that avoids this outcome. *Id.* In *Dean Witter Reynolds, Inc., v. Byrd*, however, the Supreme Court rejected this precise argument. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985). According to the *Dean Witter* Court, the prime objective of the FAA is to judicially enforce privately made agreements to arbitrate. *Id.* at 219. This overriding goal thus takes precedent over the lesser goal of promoting the expeditious resolution of claims. *Id.* at 219. As a result, the Ryans' argument that the Court should deny arbitration in order to avoid a bifurcated proceeding is unpersuasive. *Id.* Resolving any ambiguity in favor of arbitration requires this Court to find that the Ryans' claim is arbitrable under the term of their

11

contract with Thunder.  *Harvey,* 199 F.3d at 793.

Finally, neither of the two major exceptions to the presumption of arbitrability apply in this case.  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  A Court may circumvent the mandatory nature of the FAA § 3 when 1) the presumption in favor of arbitration is overcome with clear evidence that the parties did not intend the claim to be arbitrable, or, 2) the agreement does not permit any interpretation that would cover the dispute at issue.  *Id.*  Here, the Ryans have presented no evidence to suggest that the parties did not intend the claim to be arbitrable.  (Rec. Doc. No. 66.)  Furthermore, the most logical interpretation of the contract in fact does support arbitrating the Ryans breach of contract claim.  (Rec. Doc. 65-1, Work Authorization and Contract at 2).  Therefore, the presumption in favor of arbitrability remains and should be applied to the agreement between Thunder and the Ryans.

**C. Waiver of the Claim**

Thunder has not waived its right to seek arbitration. First, Thunder has not invoked the judicial process to the extent necessary to preclude arbitration.  Second, the Ryans have not alleged sufficient facts to demonstrate prejudice.

In light of the FAA's strong federal policy in favor of arbitration, courts within the Fifth Circuit indulge a presumption against finding waiver, and the party asserting waiver bears a heavy burden of proof to show that its opponent waived his contractual right to arbitrate. *Walker,* 938 F.2d at 577. A party only loses its right to arbitrate when 1) it substantially invokes the judicial process, and 2) its invocation of the judicial process causes detriment or prejudice to the other party. *Republic Ins. Co.,* 383 F.3d at 344.

       *1.* *Thunder had not substantially invoked the judicial process to the extent necessary to warrant a waiver.*

Courts must determine what constitutes a substantial invocation of the judicial process on a case by case basis. *MC Asset Recovery, LLC v. Casetex Energy, Inc.,* 2009 WL 900745 (N.D.Tex 2009). Substantial invocation may be found in acts such as the filing of dispositive motions and extensive participation in discovery. *Id.; Price,* 791 F.2d at 1159. Within the Fifth Circuit, courts have tacitly distinguished between conduct *towards* litigation – which does not garner a waiver – and actual litigation of dispositive motions. *Id.* In concrete terms, the Fifth Circuit has permitted delays up to thirteen months without

13

granting a waiver.  *See Walker*, 938 F.2d at 576-77.  In addition, parties may retain their rights to arbitrate even after they have engaged in conduct such as: the service of interrogatories and request of production, the filing of motions to extend the discovery period, and the attendance of pretrial conferences. *Id.; Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 928-29 (5th Cir. 1970).

Although the filing of dispositive motions is a factor in favor of a waiver, the Fifth Circuit draws a distinction between motions filed from a defensive standpoint – which do no constitute waiver – and those that affirmatively invoke the judicial process and demonstrate an intention to fully litigate the issues rather than seeking arbitration.  *MC Asset Recovery, LLC,* 2009 WL 900745.  For example, in *Keytrade U.S.A., Inc. v. Ain Temouchnet M/V,* the Fifth Circuit concluded that the filing of a motion for summary judgment and participating in discovery was not a sufficient invocation of the judicial process to waive the right to arbitrate, because it was taken from a defensive posture.  *Keytrade U.S.A., Inc. v. Ain Temouchnet M/V,* 404 F.3d 891, 897 (5th Cir. 2009).  Similarly, a defendant does not waive his right to arbitrate if he files a motion to dismiss a

14

complaint that sets forth numerous claims outside the scope of the arbitration clause – this action merely constitutes a "perfunctory defensive measure." *Price*, 791 F.2d at 1162.

A defendant might, however, waive his right to arbitrate if he files a motion to dismiss exclusively with respect to the precise claim he later seeks to arbitrate. *MC Asset Recovery, LLC,* 2009 WL 900745. Along these same lines, a defendant may not "reserve" the right to arbitrate; specifically, when a defendant demonstrates a full awareness of the right to arbitrate from the outset, yet repeatedly sets this right aside in favor of filing dispositive motions, the right to arbitrate may be waived. *Id.* The Fifth Circuit strongly disfavors attempts to advance one's legal position through the judicial process only to seek to finish the suit in arbitration, particularly when the dispute was arbitrable from the beginning. *Id.(citing Walker,* 938 F.2d at 577).

In this case, Thunder has not invoked the judicial process substantially enough to waive its right to arbitration. First, in light of the Fifth Circuit's tolerance for delays up to thirteen months, Thunder's delay of four months from the time of

15

its rejoinder is negligible. *Walker*, 938 F.2d at 576-77.[1] Thunder is also not susceptible to a waiver because of its participation in a pre-trial conference and its filing of an Answer– these actions are properly categorized as steps "towards" litigation which have not constituted a waiver in previous cases within the Fifth Circuit. *See MC Asset Recovery, LLC,* 2009 WL 900745. Finally, Thunder retained its right to arbitrate even after filing its motion to dismiss. *Price*, 791 F.2d at 1159. Thunder's motion is analogous to the types of "perfunctory" defensive measures that the Fifth Circuit held not to preclude arbitration in *Price*, because its motion to dismiss addressed claims in the case that existed outside the scope of the

---

[1] Thunder's delay would not also warrant a waiver if analyzed according to similar cases in either Louisiana state courts or in other federal circuits. Specifically, Louisiana state courts have only granted waiver in cases of extreme delay. *See I.D.C., Inc. V. McCain-Winkler Partnership*, 396 So.2d 590 (La.App. 3rd Cir. 1981)(holding that defendant waived right to arbitrate when he filed a request to set for trial and waited to seek arbitration until the day of the trail seven months later; *Sim v. Beauregard Elec. Cooperative, Inc.*, 322 So.2d 410 (La.App. 3rd. Cir. 1975)(holding that the right to arbitrate was waived when the party waited 33 months before seeking arbitration). Likewise, the Eight Circuit in *Ritzel Communications, Inc. v. Mid-American Cellular Telephone Co.*, found that the party seeking arbitration had waived its right to arbitrate when it proceeded to trial on the merits without requesting a stay to compel arbitration, and only raised the denial of its right to arbitrate on appeal. *Ritzel Communications, Inc. v. Mid-American Cellular Telephone Co.*, 989 F.2d 966, 968-69). Thunder's delay of four months, and subsequent filing of the motion to stay five months prior to trial is clearly distinguishable from the more extreme fact patterns that have warranted a waiver in the aforementioned cases, particularly when coupled with Thunder's comparatively minimal litigation conduct.

16

arbitration agreement. *Id.;* (Rec. Doc. No. 41). Specifically, Thunder's motion to dismiss predominantly addressed the Ryans' negligence claims and the claims arising under the Louisiana Unfair Trade Practices Act, rather than just the breach of contract claim. (Rec. Doc. No. 41). Essentially, Thunder filed its motion to dismiss with regards to the claims that the Court had already dismissed with respect to Defendant Federal. *Id.* Thunder's motion is thus distinguishable from the types of dispositive motions that the Fifth Circuit found to waive arbitration, namely, those that seek to dismiss the same issues that are later claimed to be arbitrable. *See MC Asset Recovery, LLC,* 2009 WL 900745.

Furthermore, Thunder did not waive its right to arbitration through extensive participation in discovery: at this point in the case, there has been minimal discovery and the Ryans have made no allegations that the lack of discovery is the result of Thunder's litigation conduct. *See MC Asset Recovery, LLC,* 2009 WL 900745. As a result, Thunder has not substantially invoked the judicial process to the extent necessary to a waive arbitration. *Id.*

*2. The Ryans have not proved that they have suffered prejudice sufficient to justify a waiver.*

In considering whether the party seeking arbitration has prejudiced the opposing party through its litigation conduct, the Fifth Circuit considers three main factors: 1) the amount of pretrial activity related to arbitrable claims; 2) the time and expense incurred by the party opposing arbitration in defending against the litigation efforts of the party attempting to compel arbitration and 3) the delay in asserting the right to arbitrate. *Subway*, 169 F.3d at 327.   The analysis of these three factors requires the Court to evaluate the "damage" done to the legal position of the party opposing arbitration.   *Id.*

Because of the presumption against waiver, a heavy burden of proof falls on the party opposing arbitration. *Walker,* 938 F.2d at 577.   Although large arbitration costs could preclude a litigant from effectively vindicating his or her claim through arbitration, that party is not entitled to a waiver unless the record clearly articulates, in precise terms, the costs or hardships suffered. *Green Tree Financial Corp. v. Randolph,* 531 U.S. 79, 91-92 (2000).

In this case, applying the Fifth Circuit's three-part prejudice analysis militates against a finding of waiver. *See MC*

18

*Asset Recovery, LLC,* 2009 WL 900745.   First, the amount of pretrial activity related to the arbitrable claims is minimal at most: Thunder's previous action related mainly to the Ryans' prescribed claims or to the Ryans' improper service of process, not to the breach of contract claim.   (Rec. Doc. Nos. 28, 38, 40, 41).   Second, the Ryans have not adequately shown that they incurred prejudice due to Thunder's litigation conduct and subsequent efforts to seek arbitration.   (Rec. Doc. No. 66 at 7-8).   The Ryans have alleged no facts demonstrating a loss in time and expense.   *Id.*   At most, the Ryans assert that since the suit was originally filed in 2009, Thunder's instant motion to stay and compel arbitration constitutes an unreasonable delay.   *Id.* However, Thunder was only rejoined in January and therefore the lapse between its rejoinder and the filing of this motion was not unreasonable.   (Rec. Doc. No. 39); *Walker,* 938 F.2d at 577. Moreover, the Ryans have not demonstrated that any delay on the part of Thunder diminished their own legal position.   (Rec. Doc. No. 66).   Similarly, the Ryans have not provided the Court with any evidence of monetary loss, or of the costs incurred in defending Thunder's previous litigation conduct.   *Id.*   The Ryans bear the burden of showing that they incurred costs and suffered

19

prejudice, and they manifestly have not met their burden. *Id.; Walker,* 938 F.2d at 577. As a result, nothing in the Ryans' argument affords a sufficient basis for concluding that Thunder's right to arbitration should be waived. *Id.*

## II. Federal's Motion to Dismiss or in the Alternative, Stay Proceedings and Compel Arbitration.

Although Federal was not a party to the arbitration agreement between the Ryans and Thunder, Federal is entitled to compel arbitration because of the Ryans' allegations of interdependent and concerted misconduct between Federal and Thunder. *Grigson,* 10 F.3d at 527; (Rec. Doc. No. 68-3 at 3). For this same reason, the Ryans are equitably estopped from litigating their claims against Federal in the district court. *Grigson*, 10F.3d at 527.

### A. Standard of Review for Non-signatories pursuant to Federal Arbitration Act §3.

The FAA does not compel arbitration unless the parties to a dispute have entered into a written arbitration agreement. *Matter of Talbott Big Foot, Inc.,* 887 F.2d 611, 614 (5th Cir. 1989). Similarly, the mandatory stay provision under § 3 of the FAA does not apply to those who are not contractually bound by the arbitration clause. *Id.* There are, however, exceptions to

both of these general rules.

First, a non-signatory to an agreement to arbitrate may be entitled to a discretionary stay of litigation when the non-signatory's potential liability derives from the signatory's conduct, and the claims against the non-signatory are based on the same operative facts and are inherently inseparable from the claims asserted against the signatory. *Harvey,* 199 F.3d at 796; *Subway,* 169 F.3d at 329. Furthermore, a stay is proper when litigation could not proceed against the non-signatory without adversely affecting the signatory's right to arbitrate. *Subway,* 169 F.3d at 329. If litigation would render the arbitration redundant and meaningless, a stay should be granted. *Id.*

Second, even though arbitration generally only binds signatories to an arbitration agreement, the Fifth Circuit recognizes a theory of equitable estoppel wherein a party to an arbitration agreement may be equitably estopped from litigating its claim against a non-signatory, and may be ordered to arbitration. *Grigson,* 10 F.3d at 527; *Brown v. Pacific Life Ins. Co,* 462 F.3d 384, 398 (5th Cir. 2006). Specifically, a non-signatory to an arbitration agreement can compel arbitration when either of two prongs have been satisfied: 1) when the signatory

21

to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claim against a non-signatory; or 2) when the signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract.  *Brown*, 462 F.3d at 398.  Equitable estoppel thus seeks to prevent a plaintiff from "having it both ways;" in short, a plaintiff cannot hold a non-signatory defendant liable pursuant to duties imposed by a written agreement, but then seek to deny arbitration because the defendant is a non-signatory.  *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir. 1999); *Grigson*, 10 F.3d at 528.

In terms of what constitutes "interdependent and concerted misconduct," courts in the Fifth Circuit have found that a plaintiff is equitably estopped when the plaintiff's claim against the nonsignatory defendant depends in some way on the acts of the signatory defendant, which would themselves fall within the scope of the arbitration agreement between signatories.  *See Brown*, 462 F.3d at 399.  With respect to a breach of contract claim, other courts in this district have found that when a contractor fails to make a repair and the

insurer fails to provide proper compensation, the second prong of equitable estoppel has been satisfied and the non-signatory party may compel arbitration. *Fellowship Missionary Baptist Church v. Guide One Insurance Company, et al.*, 2008 WL 4586062 (E.D. La. October 14, 2008).

**B. Discussion**

In this case, Federal is, at minimum, entitled to a discretionary stay of litigation pending the Ryans' arbitration with Thunder. *Harvey,* 199 F.3d at 796. The Ryans are litigating a breach of contract claim against both Federal and Thunder, which arises from damages incurred from Thunder's alleged failure to adequately repair the Ryans' property. (Rec. Doc. No. 1-1 at 3-4). Because the Ryans repeatedly allege that Federal is responsible for Thunder's misdeeds because of a master/servant relationship, Federal's liability both derives from Thunder's conduct and arises from the same set of facts that form the basis of the Ryans' claim against Thunder. *Harvey,* 199 F.3d at 796; (*See* Rec. Doc. 68-3 at 2-3). The Ryans' claim against Federal thus falls squarely within the circumstances that the Fifth Circuit have found to justify a discretionary stay of litigation in *Harvey* and *Subway. Harvey,* 199 F.3d at 796; *Subway*, 169 F.3d

at 329.   Furthermore, because the claims against Federal and Thunder are based on the same facts and are substantially intertwined, litigation against Federal would render the Ryans' arbitration with Thunder redundant and meaningless.   *Harvey,* 199 F.3d at 796.   In order to avoid adversely affecting Thunder's right to arbitrate, and in order to comply with the federal policy favoring arbitration, the Ryans' litigation against Federal must be stayed.   *Subway,* 169 F.3d at 329.

In addition to a stay of litigation, Federal is entitled to participate in the Ryans' arbitration with Thunder.   *See Grigson*, 10 F.3d at 528.   In this case, equitable estoppel is proper due to the existence of the second prong of the equitable estoppel requirement – namely, allegations of substantially interdependent and concerted misconduct.   *Id.; see also Brown*, 462 F.3d at 398-99.

The Ryans raise allegations of substantially interdependent and concerted misconduct by both Federal, the non-signatory, and Thunder, a signatory to the arbitration agreement.   (*See* Rec. Doc. No. 68-3 at 2-3).   According to the Ryans, Federal's active involvement in the vetting, hiring and supervision of Thunder demonstrates the clear existence of a master/servant

relationship.   (*See Id.* at 3).   The Ryans note that Federal further participated in the repair process as Thunder's "construction manager."   *Id.*   In fact, the Ryans assert that Federal and Thunder were a "package deal" and had together formed a "symbiotic relationship where Thunder would keep the claim low and Federal would continue to feed Thunder funding." *Id.* at 3,8. The Ryans' language leaves little doubt as to their allegations of concerted misconduct between Federal and Thunder.   *Id.*

Furthermore, the Ryans' claim against Federal is predicated, at least in part, upon Thunder's conduct that constituted the alleged breach of contract.   Because the breach of contract dispute is within the scope of the arbitration agreement between Thunder and the Ryans, the Ryans' allegations against Federal also constitute allegations of substantially interdependent and concerted misconduct.   *See Brown*, 462 F.3d at 399.

Finally, even the mere status relationship between Thunder and Federal as contractor/insurer supports a finding of "interdependent and concerted misconduct" in light of the identical claims alleged against each. *See Fellowship Missionary Baptist*, 2008 WL 4586062.   The fact pattern in this case is closely analogous to the circumstances before this district in

*Fellowship Missionary Baptist.   Id.*   In that case, the Court found that the plaintiff raised allegations of substantially interdependent and concerted misconduct simply by alleging that a contractor failed to make repairs and the insurer refused to provide adequate compensation.   *Id.*   Because the Ryans allege effectively identical claims against their respective contractor (Thunder) and insurer (Federal), they have thus raised allegations of interdependent and concerted misconduct.   (Rec. Doc. 1-1).   As a result, they are equitably estopped from litigating their claim against Federal.   *See Fellowship Missionary Baptist*, 2008 WL 4586062.   Finally, because Thunder is entitled to arbitration pursuant to its written agreement with the Ryans, the Ryans must pursue their claim against Federal in arbitration as well.

### III. Conclusion

The Fifth Circuit requires courts to maintain a heavy presumption in favor of arbitration.   In light of this, the Ryans' claim for breach of contract is arbitrable with respect to Thunder because 1) a written arbitration agreement exists between the parties 2) the agreement to arbitrate extends to the breach of contract dispute in this case and 3) the Ryans have not

26

sufficiently proved that Thunder waived its right to arbitrate. Consequently, Thunder's motion to stay and compel arbitration is **GRANTED**.

With respect to Federal, The Fifth Circuit allows non-signatories to an agreement to arbitrate to compel arbitration in instances where equitable estoppel is proper.  In light of this, the Ryans are equitably estopped from litigating their claim against Federal for breach of contract is because they have alleged substantially interdependent and concerted misconduct on the part of both Federal and Thunder. Consequently, Federal's motion to stay and compel arbitration is **GRANTED**.

New Orleans, Louisiana, this 8th day of July, 2011.

_____

United States District Judge